Please be seated. We're here to hear Cooper v. City of Wheeling and Mr. Stewart. Pleased to hear from you, sir. Good morning, Your Honors. May it please the Court, my name is P. Zachary Stewart and I represent the appellant Ashley Anna Cooper. This case arises out of the West Virginia Northern District. It is an appeal of Judge Bailey's order granting Appellee's motion to dismiss. The reason we're here is a relatively narrow issue, which is whether the statute of limitations for a 1983 claim arising in the state of West Virginia is one year or two years. The City of Wheeling, in addition to that matter, the City of Wheeling, based on its response brief, hopes that this Court will consider the failure to state a claim argument from its original motion to dismiss. Once again, that's not why we are here. It would have greatly assisted this Court if it were taking up that argument and had the District Court opined on that particular matter. The facts in this case date back to November 2000, I'm sorry, December 2021, when there was an incident at Northwood Health Systems in Wheeling, West Virginia. A young lady who was in one of the counseling sessions there battered the moderator or teacher at the session. I think we're familiar with the facts of this case and it seems to be a fairly simple decision here in terms of the statute of limitations. The Supreme Court's told us we're to use the general residual statute, which would appear to be subsection B of 55-2-12. We have a case travel piece, I think that's the name of it, that says that's what it is. It's fairly recent. Does that resolve, at least as to the individuals, doesn't that resolve the argument? Yes, it would, and even if the Court wanted to take a step further on that. There was a case decided out of the state of South Carolina earlier this year, ER versus Beaufort County School District. The state of South Carolina? Yes, it was out of the state. But you have Fourth Circuit and Supreme Court a precedent in your favor. That's correct. However, yes. I mean, that's not precedential when we have our own precedent. It's in your favor, so maybe you should just stick with Fourth Circuit and Supreme Court, but you argue it however you want. Actually, it brought here to this particular circuit, and in that matter, it applied Wilson and Owens and deemed that the three-year residual statute of limitations should apply. You are arguing the Fourth Circuit precedent. Yes. Okay, I understood you to be arguing like a South Carolina state court decision. I apologize. No, it is from this court in which, once again, applying the residual personal injury statute. And it's all in your favor. In that sense, yes, it is.  What about the city of Wheeling as a separate defendant? What is pled in the complaint that shows their liability? I will concede that that part of the complaint is not well pled in the sense of connecting Manoak liability to the city of Wheeling. However, with permission and leave to amend. Why wouldn't we just affirm on that basis you could always replete as far as the city is concerned, couldn't you? I could, with permission of the court, could replete and connect the liability and show that there's employer liability for the officer's errors in this matter. All right. May I reserve the rest of my time for follow-up questions? I believe that the city of Wheeling is going to have arguments to make on this matter. You're in control of your arguments, sir. Then I'll just highlight one more thing for the court, and that is, even on this particular matter, which I believe is clear that it should be West Virginia's two-year statute of limitations, as previously held by this court in the travel piece matter, this confusion that came out of the district court is obvious from the face of the order granting dismissal. It cites both one-year statute of limitations. Applying a one-year statute of limitations to certain cases that are 1983 claims, and then also stating that it applied a two-year statute of limitations in West Virginia to certain 1983 claims. It's time that this court speaks and states that it is the two-year statute of limitation on 1983 claims that applies for the claims arising in the state of West Virginia. Even the city of Wheeling has gone back and forth on this argument, as highlighted in the order granting dismissal, which shows that the city of Wheeling first argued at the district court level that, yes, it's the two-year statute of limitations. However, the city of Wheeling also argued in a separate case, as shown in a footnote within the order granting dismissal, that, no, it should be the one-year statute of limitations. This back and forth needs to end. It just needs to be settled by this court what amount of time should apply on this particular matter. As far as what we've seen from the Supreme Court, this court, its two-year statute of limitations, residual personal injury statute should apply. I yield my time, and I'll turn it over to the city of Wheeling. Mr. Buck? May it please the court, my name is Thomas Buck. I represent the defendants in this case. And the case, the court's correct, this case is a very narrow issue. But the narrow issue is focused on, really, what is the residual statute? So the residual statute in West Virginia is the entirety of 55-212. So, and Owens does say, if there's multiple enumerated statutes of limitations for intentional torts, then we go to the residual statute. We don't have the if in this case. Footnote 12 of Owens says, only when there's multiple enumerated statute of limitations do we go to the residual. In this case, we don't have multiple enumerated statutes for intentional torts. What we have is, West Virginia always goes to the residual statute in this case. And the residual statute is not, as the appellant argues, just merely subparagraph B of 55-212. 55-212 is the entire residual statute. Its title is personal actions otherwise not provided for. But why isn't the 1983 claim here clearly within B? It's within two years for damages for personal injuries. Well, that's because under West Virginia law, this claim does not survive the death of a party. So it goes to section C of the residual statute. So B is, if it survives the death of a statute, or survives the death of the party, then we go to B. It's two years. Under West Virginia law, the residual statute for actions that don't survive the death of a party is one year. That's the residual statute, C. And that comes from a long line of cases well cited. And that's the malicious prosecution claim you're talking about? Correct. It's the only claim in the case. And you're saying because of what you've just argued, it's time barred? Correct. Then why in a pleading that you filed in district court did you say defendants agree with plaintiff that her malicious prosecution claim is not time barred? Because I took a very superficial look at it, and I was wrong. And I got schooled by Judge Bailey on the issue, and I went back and looked at it more intelligently and more in depth. And what would you do with, are you just saying that we're reading the statute wrong? I mean, you would apply our Fourth Circuit and Supreme Court precedent, but you just say we're reading the statute incorrectly? Well, you've never, this court's never read subsection C. You've never done it incorrectly. We're not changing anything. Explain to me about why we need to look at it the way you're saying now. Okay, so the general rule is survivability of an action is not provided for under Section 1983. So the cases, Robertson v. Wegman and so on, say we look to the state's survivability rules. That's well established. So the survivability of the cause of action is controlled by the forum state. And under Wilt v. State Auto, it clearly explains the residual statute in West Virginia. If the statute survives the death of a party, the residual statute's two years. If the cause of action does not survive the death of a party, it's one year. That's the residual statute, and all we do here is apply the statute. Is there a West Virginia Supreme Court case that says, with the malicious prosecution claim, that that expires with the death of the party? Correct. All right, tell us what it is. Wilt v. State Auto, 506 S. 2nd, 608. And the whole case is based on that. Is that in your brief? It is not. It's a 1998 case. So all we have to do is apply the residual statute. And that's all that Judge Bailey did. Wait, Wilt v. State Auto, it is in your brief. It is? Yeah. My mistake. Yeah, it's at pages 6 and 7. Okay. So all we have to do is apply the statute of limitations, the proper application, the statute of limitations. And when this court looked in the other case the plaintiff cited, we weren't dealing with a cause of action that didn't survive. So what you looked at and said, okay, well, two-year statute of limitations, it was subparagraph B. Here, this case is subparagraph C. And subparagraph C of the residual statute is one year. We're done in one year. So it expired. And Judge Bailey applied it right. So that's really how this case comes down. If we really want to look at it, you can look at West Virginia Code Section 55-7-8A. It specifically enumerates the causes of actions. That is in my brief. It enumerates actions that survive. I suppose as a practical matter, you've got all these West Virginia district court decisions saying that the one-year statute of limitations is the correct one. Yes. Right. So I suppose there's some advantage in not just turning that up and destabilizing what has been a fairly stable rule of law within the district courts. Is that correct? That's very true. And it's important because But aren't there a whole other set of cases in West Virginia that say the opposite, that apply subsection B to malicious prosecution claims? It seems to be all over the board here. No, it's pretty consistent. Where B gets applied is usually assault and battery claims, things like that, improper taking of property, improper search and seizure. I'm looking at district court cases in West Virginia that have applied the subsection B to malicious prosecution claims, and then there are some that apply the one-year statute to statute limitation, to malicious prosecution claims. It's not consistent. It's not. I mean, I give you a whole list of Southern District and Northern District of West Virginia cases that apply subsection B to malicious prosecution claims. Yeah. And I may not be the only person that looked at it superficially and accidentally used subsection B. So you think Judge Goodwin did? Judge Keeley did? Judge Berger did? Judge Chambers did? They all got it wrong. Well, I think some of those cases, and I'm not going to take – I can't go through all of them. Some of those cases also had claims that survived two years, so they weren't solely malicious prosecutions. What's unique about this case is plaintiff has stipulated, and everybody agreed, the sole claim is malicious prosecution. We don't have an assault and battery. We don't have a taking of personal property. We don't have those other claims that the two-year statute of limitations applies to. This is very narrow. It's solely malicious prosecution. And you say this – No, I was going to say I suppose that one reason the one-year statute of limitations has been applied where the sole issue is one of malicious prosecution is that the statute begins to run on a malicious prosecution claim when the decision is decided in the defendant's favor, right? Correct. Okay, and so the question of notice, of when you have notice of a particular claim, that doesn't arise in the question where the sole issue is one of malicious prosecution because the individual is going to be very much aware of when the decision was resolved in his favor. And so he will have notice. It would be fairly clear. And so there's no danger really of the statute of limitations beginning to run when a defendant is lacking basic kind of notice. And that doesn't have to be litigated. In these malicious prosecution claims, the defendant knows darn well when something has been resolved in his favor. So he's on notice very clearly for a fact of which he above all should be aware that the statute is beginning to run because he won in the criminal case for whatever reason. That's correct. So that's the practical reason, I think, which may motivate some of them. I mean, Judge Stanker's right that you get decisions that are going different ways, but some of them involve multiple claims. This is one of those that involves purely a malicious prosecution claim. And in this kind of case, the whole question of notice, which is critical to having a statute of limitations run, there can be no doubt about it. And I think that's the practical reason that's motivating some of these decisions and the decision to take subsection C as residual. Yeah. And so the other question that comes up is it's really important, I think, for this kind of claim, a malicious prosecution claim, to be resolved promptly. Because you've got all sorts of collateral attacks that are going to be brought this way and that. And an element of those collateral attacks is likely to, whether it's malicious prosecution or not, is likely to be critical in any kind of collateral attack that is being brought on the criminal judgment. Although, in this case, a malicious prosecution claim would not go forward unless there was an acquittal. But there are other situations where there might be a conviction and still there would be a claim of a malicious prosecution. I don't know. I mean, I think there would be some value in having these sorts of claims resolved sooner rather than later. I believe so. And if we look at the timepiece case, my colleague wants to say the timepiece stands in front of this analysis. It really doesn't. Timepiece applied subsection B of the residual statute because timepiece dealt with a case that did not or could survive the death of a party. So it was not a malicious prosecution. It was not a malicious prosecution. It was a property matter. It was an illegal search and seizure of property, which expressly is provided for under 55-7-8A, survives the death of a party. You say this Wilkes v. State Auto specifically holds that malicious prosecution in West Virginia does not survive, that cause of action does not survive the death of the claimant. Correct. All right. Correct. Because when you cite, when Wilt appears in the catalog of cases, it's not separately argued in your brief. It's just included in several quotes from other cases. And you're, unless I've missed something, you're making an argument now, which maybe Erroll will be correct, as to lack of survivability that I don't see that was specifically argued in your brief. It was. Because what I said in my brief is we don't look to be in the residual statute. We look to see. I know you did that, but the specificity of why, I don't see in the brief. That is why C comes in. It's not survivable. So you agree that wasn't in your brief, that particular argument? Section C, which deals with. You did cite Section C, but the argument you're making about it now isn't articulated in your brief in the way you're doing now. Far more detail now, yes. The legal authorities are there. I'm making it in more detail now. Yes. No question. And what the Supreme Court has never said, it's never said in Owens, it's never said in any other case, that we carve up the residual statute. We ignore the subsections of the residual statute, that we just pick the longest statute of limitations in a residual statute. That's not what it says. The residual statute in West Virginia provides both a two-year and a one-year statute of limitations. That's the residual statute. The federal court can only apply that residual statute, and they can't just skip C and pretend it's not there. That's part of the residual statute. It provides for a one-year statute of limitations. On the other side of the argument, a one-year statute of limitations is a little bit unusual. Well, would there be an advantage in terms of uniformity of just having a flat rule across most of these things? Well, hold on. The default rule is two years. That's a personal injury statute of limitations generally under 1983. But, you know, you always say, well, what's the default rule? And would the default rule be two years, and would there be some advantage in terms of uniformity and resolving confusion and the rest by just saying, okay, it's two years? Well, I think Owens had the opportunity to do that, and the court chose not to. And in footnote 13, it specifically says it does not address the issue or say that one year is unfair. So you're saying that Owens requires that we look into state law and that there's no a priori definition of what is residual, that the question, the Supreme Court in Owens did not set forth a rule saying that residual statutes are invariably two years. No, not at all. They say what you've got to do is look carefully into the state law involved. And your argument is that when you look into the state law, that the residual part of that is subsection C. And that at least there are a number of district courts that I think Judge Thacker is absolutely right that there is confusion here, and they're going every which way. But, and I think you also make a good point that those cases all involve multiple claims and that they may have involved different survivorship questions. And so, and there are, I'm sure there are practical advantages to having malicious prosecution claims resolved as close as possible to the prosecution itself. Because that way the parties, it's freshest in the party's minds. The legal proceeding is freshest in the party's minds. And it's very much in the public interest to have a malicious prosecution claim resolved sooner rather than later and as close to the prosecution as possible. And that's why they've gone with one year, plus the fact that there's no question of notice, because you know when a decision has been resolved. So all I'm saying is I don't see Owens as laying down any kind of flat two-year rule. And there are other cases that support that. So if we take a look at Kentucky, Kentucky has a one-year statute of limitations that's been applied to 1983 claims. And the Sixth Circuit upheld that. Tennessee's is one year. Puerto Rico's is one year. Louisiana's is one year. And the Fifth Circuit has upheld that. California's is one year. The Ninth Circuit has upheld that. And while the legislature didn't put a statute of limitations in 1984 actions, what they did do is they put a statute of limitations in 1986. 1986, failure to prevent civil rights violation statute. The legislature put a one-year. The West Virginia legislature can change this at any point in time. If they wanted to. If it wants to. But you're right about the fact that there are a lot of one-year statutes of limitations under state law. And courts have upheld them. Yeah, in Section 1986, USC, one-year statute of limitations. So even our federal legislature has recognized one year is okay for that type of situation. Go ahead. The bottom line of your argument is that from Owens, the default rule in West Virginia would be two years with an exception where the particular claim does not survive the death of the claimant. No, it's not. The default rule is two years if it survives, one year if it doesn't survive. That's the default rule. The default is one year in this type of case. That's exactly how that statute's played out. And Owens does not give the federal courts the authority to rewrite the West Virginia statute or skip over subsection C and use B. The default statute is, for this type of case, one year. That's proper application of the default statute. Just assuming, arguendo, that we were to disagree, and I'm not saying we would. I don't know. I have no idea. But assuming that we say, well, it's two years and the claim is timely, would you prefer that we get into the merits? Or should we just return this to the district court and let the district court have the first shot at it since the district court's dismissal was on grounds of timeliness? I think proper procedure is to, if you would apply a two year instead of the one year under C, it would be to return it to the court to decide. Would be to return the case to the district court? Yes. And let the district court decide it? Yes, I believe that is the best practice. I think this court would have the authority to do it the other way. But I think traditionally. One way or another, really what we have here before us is the question of the statute of limitations. Yes. Yes, that's what was before us. And the problem, at least for me now, is that you're arguing a whole other argument that wasn't really fleshed out in your brief. So I don't know if maybe supplemental briefing is in order because I find it unfair to not only opposing counsel, especially opposing counsel, but also to the court that we're not, that this argument, I just don't see it in your briefs. Well, I mean, if the court wants additional briefing, I will gladly do that. I did argue in a brief that it's subsections. You said subsection C, but this whole thing that you argued here that fleshed that argument out in a much better, more clear way is not in your brief, and I heard you concede that earlier. And I just, I don't think it's fair to opposing counsel, so I just want to note for the record. I would have no objection. If I want to be completely fair, if you want supplemental briefing, I would very much agree with that. Now, this is a very important, it's a very important case. And we probably ought to have the benefit of full presentation on it where opposing counsel, as Judge Thacker emphasizes, has a chance to respond. Your argument seems to get better and better as it goes along with each iteration. Yeah, I'm finally getting to Judge Bailey's level. First you said no. You're a little slow out of the starting gate, but then you've begun to pick up speed. And so I think that it makes some difference to take heed of Judge Thacker's suggestion and proceed in a way that's fairness to both sides and gives both of you a chance to reflect on what the West Virginia law really is and how survivorship plays into this and how the question of multiple claims plays into that. Because, you know, you just, we like to get these things right. And it might be good to have some, I call them supplemental briefs, but you can just as easily term it supplemental reflections. That might be a good, that might be a thoughtful way to go. Because I don't, I'm not sure, I can see arguments on both sides, frankly, and I'm not, you know, I mean, I understand. I think your opposing counsel is, from my mind, trying to read Owens too broadly, more than I think the case will bear. But on the other hand, you've got this West Virginia statute, and if I may put it gently, it doesn't seem to me to be a model of clarity in terms of what, in terms of whether subsection C is residual or whether it's not. And so maybe it's good to take another look at it, I mean, for you all to do something with it. At any rate, let me ask my colleagues if they have some further questions on this. Okay, let's hear from you. Thank you very much for listening to me. Mr. Buck. Let me ask you first, are you familiar at all with this Wilkes v. State Auto case? Only to the extent that it is one of the cases that has held that a one-year statute of limitations is applied to the West Virginia State Law, West Virginia State Malicious Prosecution Torts, not something that is applied to a federal 1983 variety of malicious prosecution. Well, do you know, I mean, this is probably unfair to you for all the reasons that Judge Thacker and Judge Wilkinson have pointed out, but I mean, does malicious prosecution, a claim for malicious prosecution in West Virginia, survive the death of the claimant? No, it does not. However, on the 1980, there is no, and I'm going to say this as clearly as I can, as I've written in my notes, there's no indication that a federal 1983 claim, which is what Ms. Cooper has brought in this matter, does not survive the death of a party. So say it the opposite way, for a federal 1983 claim, it does survive the death of a party. And so what the Council for the City of Wheeling is asking this court to do is apply, is consider a state law tort. We are not here because... And it's not applicable here. It's not applicable. It can't be. We're here because of a federal 1983, federal 1983 action. And if we're going to get into the, if we're going to get deeper into statute of limitations, setting an amount of time, a hard number, rather than, like Owen says, to go back to the residual personal injury tort of the state, that was something that was discussed by the Supreme Court in both Wilson v. Garcia and Owens v. O'Kerr. And they declined to put a hard number on it and said instead that was reserved for Congress. Congress is the one that needs to put a number on what the statute of limitations is for a 1983 claim. And without them having put an exact number on it, they had to opine the way they did, and the way they did was go back to the state's residual personal injury tort. So one of the purposes of Owens and some of the other cases along that line, as I understand it, was that they wanted to get away from the practice of having federal courts look for analogs in state court decisions or state statutes. And so I guess the question is are we looking for an analog here? On the other hand, it specifically is a claim for malicious prosecution. And if opposing counsel is right, in this kind of catch-all statute here in West Virginia, even though there's two years for everything else, there's a carve-out for the one year. And the question is, well, I mean, is that still part of the default statute or is it something else? I think I'd put it back to, well, let me start here. We need to be careful about calling it a malicious prosecution action. That is something that we have done in our briefs, that courts have done in the past. However, under both Durham and Horner, they specifically state that this is actually a 1983 cause of action, and the variety of it is a malicious prosecution. We don't have a malicious prosecution federal claim labeled as such in the federal courts. We don't have a false arrest or a bad warrant claim like that. They are all 1983 actions, and they apply whatever the residual personal injury statute of limitations is for all versions of federal 1983 actions. Well, one thing, assuming we have some additional briefing here, it would be helpful to have some discussion on Section 1983 cases at large where you do have a statute that's something like the West Virginia statute that appears to have a carve-out so that we know whether the carve-out has any validity or it's going directly to the original problem, that we're getting back into picking state court causes of action as opposed to a generalized 1983 cause of action. I don't know the answer to that, but I think it would be helpful in briefing to try to address that. Certainly, and I understand why the court has some consternation about this particular argument and what we're presented here with West Virginia's statute, state-level case law, and how this court and the other federal courts are supposed to be applying it with a federal cause of action. I just come back to this is a federal cause of action that has been pled, it's a 1983 action, it is not a state malicious prosecution action. Had this case been filed within the one year of the dismissal of the underlying criminal charge, then certainly both causes of action could have been brought, both the state malicious prosecution action and the federal malicious prosecution action. But it wasn't. That's not when Ms. Cooper elected to do this case. She elected to do it, unfortunately, after one year had expired, but before two years. Instinctively, I enjoy getting the views of the West Virginia Supreme Court. I was thinking, gosh, it seems like the interpretation of this law would benefit from a West Virginia Supreme Court decision. On the other hand, we'd be certifying in something that was brought as a federal cause of action, and it wouldn't necessarily, the certification response wouldn't necessarily resolve the whole case, which a lot of states would like. But it seems to me the interpretation of the whole state law, assuming that Owens channels us into a question of state law on residuality, it would be good to get the West Virginia Supreme Court's view on it, although I think certification is normally pretty awkward when you have a federal claim like this, and where if they said, well, it was a two-year statute of limitations, that wouldn't resolve, I don't know what they'd say. I know I haven't passed my time, but may I respond? Sure, you can. But I just, if they said, well, no, it's a two-year statute of limitations, that wouldn't resolve the case. The case would just go on on the idea that it was a timely file. But you go ahead. You wanted a chance to respond. That's correct. I'm glad to give that to you. Thank you. I don't think this, it's kind of like a bottom-up approach, is the way that the federal courts have handled matters in the past anyways, especially on an issue such as this. I mean, we look to the Supreme Court, Court of Appeals. Those get applied by the district courts. The city of Wheeling is hoping that we take this bottom-up approach where we take district court rulings. Now let's create new law at the Court of Appeals. Let's create new law in the Supreme Court. That's not the way it works. It's the top down from the Supreme Court to the Court of Appeals, the districts. And, you know, something I'm reminded of is the statement at the top of the U.S. Supreme Court, and that's equal justice under law. That's what we're looking for here. Okay. Yeah. And I would ask that the courts, in the event that, you know, obviously we understand if it decides to request supplemental briefing on the issue, I respect that. However, I don't believe that is fully necessary. I would ask that the courts reverse the district courts' holding and remand for further proceeding. All right. We thank you, sir. We will adjourn court and come down and read counsel. I want to thank our courtroom deputy for a fine job. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Stephanie D. Thacker